#62912

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA -5 PM 3:11
CHARLOTTE DIVISION

ORIGINAL

DEPUTY CLERK_____

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 3:12-CV-519 ) |
| REX VENTURE GROUP, LLC d/b/a ZEEKREWARDS.COM, and PAUL BURKS, | ) ) **3-12MC-115-B** ) ) |
| Defendants. | ) ) |

**NOTICE OF FILING OF COMPLAINT AND ORDER APPOINTING RECEIVER
PURSUANT TO 28 U.S.C. §754**

By Order of the United States District Court for the Western District of North Carolina, filed

on December 4, 2012 Kenneth Bell, Esq. of McGuireWoods LLP was reappointed as temporary

receiver (the "Receiver") for and over the estate for, Defendant Rex Ventures Group, LLC d/b/a/

ZeekRewards.com, any of its subsidiaries, whether incorporated or unincorporated, and any

businesses or business names under which it does business ("Receivership Defendant").

Pursuant to 28 U.S.C. §754, the Receiver hereby files copies of:

• The Securities and Exchange Commission's Complaint against the Receivership Defendants
  (attached as Exhibit A);

• Order Reappointing Receiver filed December 4, 2012 (attached as Exhibit B)

• Agreed Order Approving Temporary Receiver and Freezing Assets of Defendant Rex
  Venture Group, LLC," dated August 17, 2012 (attached as Exhibit C) ; and

- Order Granting in Part and Denying in Part Receiver's Motion Seeking Amendment of Agreed Order Appointing Temporary Receiver and Freezing Assets of Defendant Rex Venture Group, LLC," dated August 30, 2012 (attached as Exhibit D)

Respectfully submitted this 4th day of December, 2012.

By:   /s/ Irving M. Brenner
      Irving M. Brenner
      NC State Bar No.: 15483
      McGUIREWOODS LLP
      201 North Tryon Street, Suite 3000 (28202)
      Post Office Box 31247
      Charlotte, North Carolina 28231
      Telephone:  (704) 343-2075
      Facsimile:  (704) 343-2300
      Email: ibrenner@mcguirewoods.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have served the foregoing NOTICE OF FILING OF COMPLAINT

AND ORDER APPOINTING RECEIVER PURSUANT TO 28 U.S.C. §754 by U.S. mail  to the following

parties in this case:

John J. Bowers
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20815
bowersj@sec.gov

C. Melissa Owen
Jacob H. Sussman
Noell P. Tin
Sarah Elizabeth Bennett
Tin, Fulton, Walker & Owen
301 East Park Avenue
Charlotte, North Carolina 28203
cmowen@tinfulton.com
jsussman@tinfulton.com
ntin@tinfulton.com
sbennett@tinfulton.com

This the 4th day of December, 2012.

/s/ Irving M. Brenner
Irving M. Brenner

# EXHIBIT A

To Notice of Filing of Complaint and Order
Appointing Receiver Pursuant to 28 U.S.C. §754

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA CHARLOTTE DIVISION

FILED
CHARLOTTE, NC

AUG 1 7 2012

U.S. DISTRICT COURT
WESTERN DISTRICT OF NC

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) ) | |
| Plaintiff, ) ) ) | |
| vs. ) | Civil Action No. 3:12cv519 |
| REX VENTURE GROUP, LLC d/b/a ZEEKREWARDS.COM, and PAUL R. BURKS, ) ) ) ) | |
| Defendant, ) ) | |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission" or "SEC")

alleges as follows:

## SUMMARY OF ALLEGATIONS

1.    The Commission files this emergency action to halt the fraudulent

unregistered offer and sale of securities in an unregistered investment contracts

constituting securities in a combined Ponzi and Pyramid scheme perpetrated by

Defendants Rex Venture Group, LLC ("Rex Venture") d/b/a

www.ZeekRewards.com ("ZeekRewards") and its principal, Paul Burks ("Burks") (collectively "Defendants").

2.    Defendants solicit investors through the internet and over interstate wires to participate in the ZeekRewards program, a self-described "affiliate advertising division" for the companion website, www.zeekler.com ("Zeekler"), through which Defendants operate penny auctions.

3.    Since approximately January 2011 through the present, the Defendants have raised more than $600 million from approximately 1 million investors nationwide and overseas by making unregistered offers and sales of securities through the ZeekRewards website in the form of Premium Subscriptions and VIP Bids.

4.    Unbeknownst to its investors, ZeekRewards is, in reality, a massive Ponzi and pyramid scheme.

5.    Approximately 98% of ZeekRewards' total revenues, and correspondingly the purported share of "net profits" paid to current investors, are comprised of funds received from new investors.

6.    Defendants currently hold approximately $225 million in investor funds in approximately 15 foreign and domestic financial institutions, and those funds are at risk of imminent dissipation and depletion.

2

7.     Defendants have violated, and unless enjoined will continue to violate, the antifraud and securities registration provisions of the federal securities laws.  Unless restrained and enjoined, Defendants are likely to engage in future violations of the federal securities laws.  Accordingly, the Commission (A) seeks to preserve investor funds through an asset freeze, (B) seeks orders (i) for an accounting, (ii) prohibiting the destruction of documents and (iii) appointing a temporary receiver over the Defendants' assets; and (C) seeks preliminary and permanent injunctions, disgorgement with prejudgment interest, and civil penalties against each of the Defendants.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(l) and 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d)(l) & 77v(a)] and  Sections 21(d)(l), 21(d)(3)(A), 21(e) and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d)(l), 78u(d)(3)(A), 78u(e) & 78aa].  Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

9.     Venue is proper in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act, 15 U.S.C.

§ 78aa, because certain of the transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws occurred within this district. Both Defendant Burks and Defendant Rex Venture d/b/a/ ZeekRewards transacted business, and offered and sold the securities that are the subject of this action, to investors in this district.

## DEFENDANTS

10.    **Paul R. Burks**, age 65, is a resident of Lexington, North Carolina. Burks is the sole owner of Rex Venture Group, LLC, and exercises control over ZeekRewards, Zeekler, and other affiliated websites.

11.    **Rex Venture Group, LLC** ("Rex Venture") is a Nevada limited liability company with its principal place of business in Lexington, North Carolina. Rex Venture wholly owns and operates ZeekRewards, an internet website (www.zeekrewards.com) with physical operations in Lexington, North Carolina, and internet customers and contacts throughout the United States and internationally.

4

# FACTUAL ALLEGATIONS

## ORIGINS OF ZEEKREWARS

12.    Since 1997, Burks has operated through Rex Venture (and its corporate predecessor) several online, multi-level marketing businesses.

13.    In 2010, Burks created Zeekler.com, a penny auction website offering items ranging from personal electronics to cash.  Penny auctions require participants to pay a non-refundable fee to purchase and place each incremental bid (typically one cent) on merchandise sold via auction.  The penny auctions were not particularly successful until Burks launched ZeekRewards in January 2011.

14.    ZeekRewards is the self-described "private, invitation-only, affiliate advertising division" of Zeekler.  Bidders on Zeekler.com penny auctions can acquire bids by purchasing bids on Zeekler.com, but ZeekRewards and its affiliates also sell or give away free sample bids to be used in the penny auctions.

## THE ZEEKREWARDS OFFERING

15.    Through publicly available websites that Defendants own, operate, control, or sponsor, Defendants solicit persons to become investors or "affiliates" in ZeekRewards.

16.    Through the ZeekRewards program, Defendants offer affiliates several ways to earn money, two of which involve the offer and sale of securities in the form of investment contracts:  the "Retail Profit Pool" and the "Matrix."

5

17.    From at least January 2011 through the present, via the ZeekRewards website, Defendants have raised at least $600 million through the offer and sale of securities (via the Retail Profit Pool and the Matrix) to more than 1 million domestic and international investors.

18.    Defendants have not made any effort to determine if investors in fact have the financial wherewithal to invest, nor have they ever made any effort to determine if investors have any experience investing before investors commit any capital to ZeekRewards.

19.    No registration statement has been filed or has been in effect with the Commission in connection with the securities the Defendants are offering and selling, and have offered and sold.

### 1. THE RETAIL PROFIT POOL

20.    Defendants attracted new investors to ZeekRewards with the promise of daily profit-share awards distributed through a Retail Profit Pool, which operates as a Ponzi scheme. According to the ZeekRewards website, through the Retail Profit Pool the company shares "up to 50% of the daily net profits" with affiliates who meet certain qualifications ("Qualified Affiliates").

21.    To become a Qualified Affiliate, investors must satisfy four criteria: (i) enroll in a monthly subscription plan requiring payments of $10, $50, or $99 per month; (ii) enroll new penny auction customers personally, through the

6

ZeekRewards co-op program, or through third-party businesses endorsed by ZeekRewards; (iii) sell at retail or purchase and give away as samples a minimum of ten Zeekler.com bids, earning Profit Points; and (iv) place one free ad daily for Zeekler.com and submit proof to ZeekRewards.

22.     The requirements to become a Qualified Affiliate constitute an investment in a common enterprise and require little or no investor effort.

23.     Qualified Affiliates have no role in ZeekRewards' operations. The Defendants alone created, update and operate the websites, handle all payments, manage the bank accounts and payment service providers, manage affiliate and customer accounts, manage all affiliate and customer services, oversee and disburse all bids, operate the auctions, create all advertisements, sponsor recruiting videos and calls, create the advertisements, and decide the daily payout percentages for the Retail Profit Pool.

24.     Investor funds paid are pooled and comingled in a handful of financial institutions. Investor funds also are commingled with ZeekRewards and the penny auction website's overall revenues from all company operations.

25.     Qualified Affiliates earn Profit Points by either (a) selling penny auction bid packages directly to retail customers ("Retail Bids"), or (b) purchasing "VIP Bids" and giving them away as samples to retail customers or to other personally-sponsored affiliates.

26.     Most affiliates opt to simply purchase VIP Bids (up to a maximum $10,000 investment) and give them away as samples in order to earn Profit Points. Even then, affiliates need not exert any efforts in giving away the VIP Bids they purchase because Defendants have created automated programs, including the "Customer Co-Op" and the "5CC" programs, that generate or have generated purported customers to whom the bids can be given automatically without any further effort on the affiliates' part.

27.     Earning daily dividends also requires that affiliates place one free internet advertisement daily for the company, but that exercise requires little or no effort.  Affiliates may merely copy and paste free ads – created by Defendants without input from affiliates – from a company-sponsored program, which the ZeekRewards website boasts should take no more than five minutes per day. Affiliates also may employ a third-party program to generate ads automatically for them; affiliates must simply verify that they've placed the ad by submitting an internet link to ZeekRewards.  Placing more or better ads does not enhance an individual's share of profits.

28.     Qualified Affiliates are paid their share of net profits from the Retail Profit Pool in the form of daily "awards" or dividends on accumulated Profit Points, which function like shares of stock.

8

29.   The size of the each Qualified Affiliate's daily award is dependent solely on how many Profit Points that investor has accumulated, and is not based on rendering any significant service to ZeekRewards.  Thus, buying and giving away more VIP Bids earns greater Profit Points, hence a larger daily profit share award, without any additional effort required.

30.   Qualified Affiliates have the option to receive their daily "award" that typically has approximated 1.5% per day as: (i) a cash payment; (ii) additional Profit Points ; or (iii) a combination of both.

31.   ZeekRewards encourages Qualified Affiliates to convert at least 80% of their daily award as additional Profit Points.  Most Qualified Affiliates follow this suggested approach.

32.   The daily award has a compounding effect for those Qualified Affiliates who elect to receive the daily award as new Profit Points rather than cash.

33.   As a result of the compounding effect, Qualified Affiliates now have nearly 3 billion Profit Points outstanding.  Based on the ZeekRewards current outstanding Profit Point balance, the company would be obligated to pay out approximately $45 million per day if all Qualified Affiliates elected to receive their daily award in cash.

9

34.     Qualified Affiliates have no role in ZeekRewards' operations.  The Defendants alone created, update and operate the websites, handle all payments, manage the bank accounts and payment service providers, manage affiliate and customer accounts, oversee and disburse all bids, operate the auctions, manage the Customer Co-Op, manage the 5CC program, create all advertisements, sponsor recruiting videos and calls, create the advertisements, and decide the daily payout percentages for the Retail Profit Pool.

35.     Investor funds paid in the form of subscription payments and purchases of VIP Bids are pooled and commingled in a handful of financial institutions.   Investor funds also are commingled with ZeekRewards and the penny auction website's overall revenues from all company operations.

## 2.  THE MATRIX

36.     ZeekRewards also employs a pyramid "Matrix" to reward its investors for recruiting others to join the scheme.  The company places each newly recruited affiliate into a "2x5 forced-fill matrix," which is a multi-level marketing pyramid with 63 positions that pools new investors' money and pays a bonus to affiliates for every "downline" investor within each affiliate's personal matrix.

37.     Affiliates that have (i) enrolled in a monthly subscription plan requiring payments of $10, $50, or $99 per month; and (ii) recruited at least two

other "Preferred Customers" (i.e., investors who have likewise enrolled in a monthly subscription plan) qualify to earn bonuses through the Matrix.

38.   Once qualified, an affiliate earns bonuses and commissions for every paid subscription within her downline 2x5 pyramid, whether or not she personally recruited everyone within the matrix.  Furthermore, affiliates are rewarded merely for recruiting new investors without regard to any efforts by the affiliates to sell bids or otherwise support the retail businesses.

39.   The Defendants, not the investors,  created, update, and operate the websites, handle all payments, manage the bank accounts and payment service providers, manage affiliate and customer accounts, create all advertisements, sponsor recruiting videos and calls, sponsor training videos and calls, and track and determine all Matrix bonus payments.

40.   Investor funds paid in the form of subscription payments are pooled and commingled in a handful of financial institutions along with all of Rex Venture's other revenues.

41.   Investors' Matrix bonuses and the Defendants' profits are both derived from the same source:  the overall revenues generated from new investors to the ZeekRewards program and the penny auction website.

## DEFENDANTS' OPERATION OF A FRAUDULENT PONZI AND PYRAMID SCHEME

42.    Defendants represent that through the Retail Profit Pool they will pay investors, or Qualified Affiliates, "up to 50%" of the company's daily net profits in the form of daily profit share awards.

43.    Burks is solely responsible for determining the amount of "net profits" to share in the Retail Profit Pool.

44.    Defendants represent that daily awards are calculated by dividing "up to 50%" of daily net profits by the number of Profit Points outstanding among all Qualified Affiliates.  This calculation results in a daily dividend paid to each Qualified Affiliate that consistently has averaged approximately 1.5% per day.

45.    In fact, the dividend bears no relation to the company's net profits. Instead, Burks unilaterally and arbitrarily determines the daily dividend rate so that it averages approximately 1.5% per day, giving investors the false impression that the business is profitable.

46.    Despite encouraging affiliates to purchase and give away VIP Bids to promote and drive traffic to the Zeekler penny auction website, Defendants fail to disclose that almost none of the VIP Bids given away by Qualified investors are actually used on the Zeekler penny auction website.  Of approximately 10 billion VIP Bids purchased by or awarded to investors, less than one-quarter of one

percent have been actually used in auctions on the Zeekler penny auction website. Thus, the VIP Bids do little or nothing to actually promote the retail business.

47.    Moreover, Defendants fail to disclose that more than 90% of all revenues (and hence net profits) are derived from new investor deposits (in the form of VIP Bid purchases and subscription fees) rather than actual retail revenues.

48.    Defendants also fail to disclose that without new investor deposits (in the form of VIP Bid purchases and subscription fees), revenues would dwindle substantially as less than 10% of daily revenues come from actual retail sales, and the scheme would likely collapse immediately.

49.    Based on the average 1.5% daily dividend on 3 billion Profit Points outstanding, ZeekRewards would owe nearly $45 million per day in profit share awards to investors – ZeekRewards Qualified Affiliates – if investors requested cash rewards instead of points.  The company's actual daily revenues, which in July 2012 averaged approximately $5 million per day, cannot support the daily awards that have been consistently been "paid" or awarded at an average of approximately 1.5% per day.

50.    Defendants fail to disclose to investors that the company would quickly become insolvent if more Qualified Affiliates elected to take daily awards in cash from the Retail Profit Pool rather than converting their awards into ever-increasing accumulated Profit Points.

51.     Defendants also fail to inform investors of the substantial risk that the Matrix is prone to collapse if the promoters are unable to recruit ever-increasing numbers of paid affiliates into the Matrix pyramid, because without new investors there will be no source of revenue to pay existing participants in the scheme.

52.     Although to date ZeekRewards has paid out nearly $375 million to Qualified Affiliates through the Retail Profit Pool and the Matrix, the company has only approximately $225 million in deposits, which is insufficient to satisfy future awards based on outstanding Profit Points and Matrix commissions and bonuses.

### RISK OF FURTHER DISSIPATION OF INVESTOR FUNDS

53.     ZeekRewards' current investor payouts are approaching, and may soon exceed, total incoming revenue.  In July 2012, total revenue for ZeekRewards was approximately $162 million, while total investor cash pay-outs were approximately $160 million.  If more Qualified Affiliates in the Retail Profit Pool elect to receive cash payouts for daily awards rather than reinvestment into more VIP Points, ZeekRewards' cash outflows would eventually exceed total revenue.

54.     Burks has withdrawn approximately $11 million while operating Rex Venture and ZeekRewards, of which approximately $4 million remains in his possession, custody or control.

55.     Burks distributed approximately $1 million of the funds garnered from ZeekRewards to family members.

56.    Defendant Rex Venture currently hold approximately $225 million in investor funds in approximately 15 financial institutions.  These funds are in danger of rapid depletion.

57.    Approximately $40 million of those investor funds are held in the accounts of online payment service providers, of which approximately $30 million are held outside the United States.  The vast majority of these funds are being held by the payment processors as reserves against potential credit card "charge-backs" (i.e., claims for refunds for transactions involving fraud).

58.    The Retail Profit Pool's viability hinges on investors continuing to accept daily rewards in points instead of cash.  With approximately 3 billion VIP Points outstanding in the Retail Profit Pool, if Defendants continue to pay daily awards at their historical average rate of approximately 1.5%, and investors seek cash awards instead of points, investor claims for cash withdrawals could increase to approximately $45 million per day.  With only approximately $225 million on hand, the company would quickly be rendered insolvent.

## FIRST CLAIM FOR RELIEF

### UNREGISTERED OFFER AND SALE OF SECURITIES

### Violations of Sections 5(a) and 5(c) of the Securities Act

59.    The Commission realleges and incorporates by reference the foregoing paragraphs.

60.     Defendants, by engaging in the conduct described above, directly or indirectly, made use of means or instruments of transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale.

61.     No registration statement has been filed with the Commission or has been in effect with respect to any of the offerings or sales alleged herein.

62.     By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## SECOND CLAIM FOR RELIEF

### FRAUD IN THE OFFER OR SALE OF SECURITIES

### Violations of Section 17(a) of the Securities Act

63.     The Commission realleges and incorporates by reference the foregoing paragraphs.

64.     Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails:

16

     a.    with scienter, employed devices, schemes, or artifices to

          defraud;

     b.    obtained money or property by means of untrue statements of a

          material fact or by omitting to state a material fact necessary in

          order to make the statements made, in light of the

          circumstances under which they were made, not misleading; or

     c.    engaged in transactions, practices, or courses of business which

          operated or would operate as a fraud or deceit upon the

          purchaser.

65.    By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## THIRD CLAIM FOR RELIEF

**FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

66.    The Commission realleges and incorporates by reference paragraphs 1 through 64 above.

67.    Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security,

by the use of means or instrumentalities of interstate commerce, of the mails, or of

the facilities of a national securities exchange, with scienter:

     a.    employed devices, schemes, or artifices to defraud;

     b.    made untrue statements of a material fact or omitted to state a

            material fact necessary in order to make the statements made, in

            the light of the circumstances under which they were made, not

            misleading; or

     c.    engaged in acts, practices, or courses of business which

            operated or would operate as a fraud or deceit upon other

            persons.

    68.    By engaging in the conduct described above, Defendants violated, and

unless restrained and enjoined will continue to violate, Section 10(b) of the

Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. §

240.10b-5].

**PRAYER FOR RELIEF**

    **WHEREFORE,** Plaintiff Securities and Exchange Commission respectfully

requests that the Court:

**I.**

    Issue findings of fact and conclusions of law that Defendants committed the

alleged violations described hereinabove.

**II.**

Issue judgments, in a form consistent with Fed. R. Civ. P. 65(d),

permanently enjoining Defendants and their officers, agents, servants, employees,

and attorneys, and those persons in active concert or participation with any of

them, who receive actual notice of the judgment by personal service or otherwise,

and each of them, from violating, directly or indirectly, Sections 5(a), 5(c) and

17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], and Section

10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17

C.F.R. § 240.10b-5].

**III.**

Issue, in a form consistent with Fed. R. Civ. P. 65, as to all Defendants, a

permanent injunction freezing the assets of Rex Venture and any entity affiliated

with it, directing that all financial or depository institutions comply with the

Court's Order, appointing a temporary receiver over the assets of Rex Venture,

prohibiting each of the Defendants from destroying documents, requiring

accountings from each of the Defendants, and ordering expedited discovery.

**IV.**

Order that Defendants, and any employees or agents of Rex Venture, be

restrained and enjoined from destroying, removing, mutilating, altering,

concealing, or disposing of, in any manner, any of their books, records and

documents relating to the matters set forth in the Complaint, or the books, records and documents of any entities under their control, until further order of the Court.

## IV.

Order Rex Venture to disgorge all ill-gotten gains, including prejudgment interest, resulting from the illegal acts or courses of conduct alleged in this Complaint.

## V.

Order Burks to pay $4 million in civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

## VI.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VII.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: August 17, 2012                    Respectfully submitted,

John J. Bowers (NC Bar No. 23950)
Stephen L. Cohen
J. Lee Buck, II
Brian M. Privor
Alfred C. Tierney
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-xxxx
Telephone:  (202) 551-4645  (Bowers)
Facsimile:  (202) xxx-xxxx
*Email:  BowersJ@sec.gov*

Attorney for Plaintiff
Securities and Exchange Commission

21

# EXHIBIT B

To Notice of Filing of Complaint and Order
Appointing Receiver Pursuant to 28 U.S.C. §754

IN THE UNITES STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| vs. | Civil Action No. 3:12 cv 519 |
| REX VENTURE GROUP, LLC d/b/a ZEEKREWARDS.COM, and PAUL BURKS, | |
| Defendants. | |

## <u>ORDER REAPPOINTING RECEIVER</u>

On August 17, 2012, the Court signed an "Agreed Order Appointing Temporary Receiver and Freezing Assets of Defendant Rex Venture Group, LLC" pursuant to which Kenneth D. Bell (the "Receiver") was appointed to act as the Temporary Receiver for Defendant Rex Venture Group and all entities owned or controlled by it.  Since his appointment, the Receiver has been tracing funds relating to this case and believes he may have identified causes of action and other potential receivership assets located in and held by individuals located in other federal districts. In order to comply with the requirements of 28 U.S.C. § 754 and to confer jurisdiction upon this Court regardless of the location of the receivership assets or the individuals possessing those assets, the Receiver has filed a Motion for Order Reappointing Receiver seeking reappointment on the same terms currently in place.  The Court, having carefully considered the Motion and relevant case law, concludes that the Motion should be granted.

IT IS, THEREFORE, ORDERED that Kenneth D. Bell is hereby REAPPOINTED as Temporary Receiver in these proceedings as to Rex Venture Group, LLC and all entities owned or controlled by it.  This reappointment incorporates all of the provisions set forth in the original "Agreed Order Approving Temporary Receiver and Freezing Assets of Defendant Rex Venture Group, LLC," signed by this Court on August 17, 2012; and the "Order Granting in Part and Denying in Part Receiver's Motion Seeking Amendment of Agreed Order Appointing Temporary Receiver and Freezing Assets of Defendant Rex Venture Group, LLC," signed by this Court on August 30, 2012.

Signed this 30 day of December, 2012,

_____
HONORABLE GRAHAM C. MULLEN
UNITED STATES DISTRICT JUDGE

2

# EXHIBIT C

To Notice of Filing of Complaint and Order
Appointing Receiver Pursuant to 28 U.S.C. § 754

FILED
CHARLOTTE, NC

AUG 1 7 2012

U.S. DISTRICT COURT
WESTERN DISTRICT OF NC

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>REX VENTURES GROUP, LLC d/b/a ZEEKREWARDS.COM, and PAUL BURKS,<br><br>Defendants, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action
No. 3:12cv519

### AGREED ORDER APPOINTING TEMPORARY RECEIVER AND
### FREEZING ASSETS OF DEFENDANT REX VENTURE GROUP, LLC

**WHEREAS** this matter has come before this Court upon motion of

the Plaintiff Securities and Exchange Commission ("the SEC" or "the

Commission") to appoint a receiver in the above-captioned action; and

**WHEREAS** the Court finds that, based on the record in these

proceedings, the appointment of a temporary receiver in this action over Defendant

Rex Venture Group, LLC d/b/a ZeekRewards.com, any of its subsidiaries, whether

incorporated or unincorporated, and any businesses or business names under which

it does business ("Receivership Defendant") is necessary and appropriate for the

purposes of marshaling and preserving all assets of the Receivership Defendant

("Receivership Assets") and those assets: (a) held or possessed by Receivership

Defendant ; (b) held in constructive trust for the Receivership Defendant; and (c)

fraudulently transferred by the Receivership Defendant; and,

      **WHEREAS** this Court has subject matter jurisdiction over this action

and personal jurisdiction over the Defendant, and venue properly lies in this

District.

      **NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED**

**AND DECREED THAT:**

    1.      This Court hereby takes exclusive jurisdiction and possession of the

assets, of whatever kind and wherever situated, of Defendant Rex Venture Group,

LLC d/b/a ZeekRewards.com, any of its subsidiaries, whether incorporated or

unincorporated, and any businesses or business names under which it does

business ("Receivership Defendant").

    2.      Pending further Order of this Court, _Ken Bell_ is hereby

appointed to serve without bond as temporary receiver (the "Receiver") for, and

over the estate of, the Receivership Defendant and all entities it controls or in

which it has an ownership interest, including but not limited to all subsidiaries,

partnerships and related or affiliated unincorporated entities, including business

lines or businesses operated via internet websites.

2

## I.  Asset Freeze

3.      Except as otherwise specified herein, all Receivership Assets and
Recoverable Assets are frozen until further order of this Court.  Accordingly, all
persons and entities with direct or indirect control over any Receivership Assets
and/or any Recoverable Assets, other than the Receiver, are hereby restrained and
enjoined from directly or indirectly transferring, setting off, receiving, changing,
selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing
such assets.  This freeze shall include, but not be limited to, Receivership Assets
and/or Recoverable Assets that are on deposit with financial institutions such as
banks, brokerage firms, and online or internet-based payment processors.

## II.  General Powers and Duties of Receiver

4.      The Receiver shall have all powers, authorities, rights and privileges
heretofore possessed by the receivership defendant and its officers, directors,
members, managers and general and limited partners of the Receivership
Defendant under applicable state and federal law, including without limitation by
the governing charters, bylaws, articles and/or operating or other agreements in
addition to all powers and authority of a receiver at equity, and all powers
conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692,
and Fed. R. Civ. P. 66.

3

5.       The trustees, directors, officers, members, managers, employees, investment advisors, accountants, attorneys and other agents of the Receivership Defendant are hereby dismissed and the powers of any general partners, directors, members and/or managers are hereby suspended.  Such persons and entities shall have no authority with respect to the Receivership Defendant's operations or assets, except to the extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume and control the operation of the Receivership Defendant and shall pursue and preserve all of its claims.  Nothing in this paragraph shall require Defendant Paul R. Burks to dismiss his personal counsel.

6.       No person holding or claiming any position of any sort with the Receivership Defendant (or any of its affiliated businesses or entities) shall possess any authority to act by or on behalf of the Receivership Defendant.

7.       Subject to the specific provisions in Sections III through XIV, below, the Receiver shall have the following additional powers and duties:

> A. To use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Defendant, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Defendant owns, possesses, has a beneficial interest in, or controls directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estates");
>
> B. To take custody, control and possession of all Receivership Property and records relevant thereto from the Receivership

4

Defendant; to sue for and collect, recover, receive and take into possession from third parties all Receivership Property and records relevant thereto;

C. To manage, control, operate and maintain the Receivership Estates and hold in his possession, custody and control all Receivership Property, pending further Order of this Court;

D. To use Receivership Property for the benefit of the Receivership Estates, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

E. To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, members, managers, trustees and agents of the Receivership Defendant;

F. To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;

G. To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

H. To issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

I. To bring such legal actions on behalf of Receivership Defendant based on law or equity in any state, federal, or foreign court, tribunal or agency as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

J. To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estates; and,

K. To take such other action as may be approved by this Court.

5

### III. Access to Information

8.        The Receivership Defendant and the past and/or present officers, directors, agents, members, managers, general and limited partners, trustees, attorneys, accountants and employees of the Receivership Defendant, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Defendant and/or all Receivership Property; such information shall include but not be limited to books, records, documents, accounts and all other instruments and papers.  Nothing in this paragraph shall preclude Paul Burks from asserting attorney-client privilege on his personal behalf or require production of attorney work product created by Burks' counsel representing him in his personal capacity.

9.        Within ten (10) days of the entry of this Order, unless otherwise agreed to in writing by the Receivership Defendant and the SEC, the Receivership Defendant shall file with the Court and serve upon the Receiver and the Commission a sworn statement, listing: (a) the identity, location and estimated value of all Receivership Property; (b) all employees (and job titles thereof), other personnel, attorneys, accountants and any other agents or contractors of the

6

Receivership Defendant; and, ( c) the names, addresses and amounts of claims of all known creditors of the Receivership Defendant.

10.      Within thirty (30) days of the entry of this Order, unless otherwise agreed to in writing by the Receivership Defendant and SEC, the Receivership Defendant shall file with the Court and serve upon the Receiver and the Commission a sworn statement and accounting, with complete documentation, covering the period from January 1, 2010 to the present:

      A. Of all Receivership Property, wherever located, held by or in the name of the Receivership Defendant, or in which it, directly or indirectly, has or had any beneficial interest, or over which it maintained or maintains and/or exercised or exercises control, including, but not limited to: (a) all securities, investments, funds, real estate, automobiles, jewelry and other assets, stating the location of each; and (b) any and all accounts, including all funds held in such accounts, with any bank, brokerage or other financial institution held by, in the name of, or for the benefit of the Receivership Defendant, directly or indirectly, or over which it maintained or maintains and/or exercised or exercises any direct or indirect control, or in which it had or has a direct or indirect beneficial interest, including the account statements from each bank, brokerage or other financial institution;

      B. Of every account at every bank, brokerage or other financial institution: (a) over which Receivership Defendant has signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Defendant;

      C. Of all credit, bank, charge, debit or other deferred payment card issued to or used by the Receivership Defendant, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the

7

most recent billing statement, and all statements for the last twelve
months;

D. Of all assets received by the Receivership Defendant from any
person or entity, including the value, location, and disposition of
any assets so received;

E. Of all funds received by the Receivership Defendant in any way
related, directly or indirectly, to the conduct alleged in the
Commission's Complaint, the submission must clearly identify,
among other things, all investors, the date and amount of their
investments, and the current location of such funds;

F. Of all expenditures exceeding $1,000 made by the Receivership
Defendant, including those made on its behalf by any person or
entity; and

G. Of all transfers of assets made by the Receivership Defendant.

11.    Within thirty (30) days of the entry of this Order, the Receivership
Defendant shall provide to the Receiver and the Commission copies of the
Receivership Defendant's federal income tax returns for 2010 through 2012 with
all relevant and necessary underlying documentation.

12.    Subject to all applicable constitutional or legal privileges, the
Receivership Defendant's past and/or present officers, directors, agents, attorneys,
members, managers, shareholders, employees, accountants, debtors, creditors and
general and limited partners, and other appropriate persons or entities shall answer
under oath to the Receiver all questions which the Receiver may put to them and
produce all documents as required by the Receiver regarding the business of the
Receivership Defendant, or any other matter relevant to the operation or

8

administration of the receivership or the collection of funds due to the

Receivership Defendant.  In the event that the Receiver deems it necessary to

require the appearance of the aforementioned persons or entities, the Receiver shall

make its discovery requests in accordance with the Federal Rules of Civil

Procedure.

13.     To issue subpoenas to compel testimony of persons or production of

records, consistent with the Federal Rules of Civil Procedure and applicable Local

Rules, except for the provisions of Fed. R. Civ. P. 26(d)(1), concerning any subject

matter within the powers and duties granted by this Order.

14.     The Receivership Defendant is required to assist the Receiver in

fulfilling his duties and obligations.  As such, it must respond promptly and

truthfully to all requests for information and documents from the Receiver.

### IV. Access to Books, Records and Accounts

15.     The Receiver is authorized to take immediate possession of all assets,

bank accounts or other financial accounts, books and records and all other

documents or instruments relating to the Receivership Defendant.  All persons and

entities having control, custody or possession of any Receivership Property are

hereby directed to turn such property over to the Receiver.

16.     The Receivership Defendant, as well as its agents, servants,

employees, attorneys, any persons acting for or on behalf of the Receivership

Defendant, and any persons receiving notice of this Order by personal service, facsimile transmission or otherwise, having possession of the property, business, books, records, accounts or assets of the Receivership Defendant are hereby directed to deliver the same to the Receiver, his agents and/or employees.

17.     All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, and of the Receivership Defendant that receive actual notice of this Order by personal service, facsimile transmission or otherwise shall:

A. Not liquidate, transfer, sell, conveyor otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Defendant except upon instructions from the Receiver;

B. Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

C. Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the Commission a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

D. Cooperate expeditiously in providing information and transferring funds, assets and accounts to the Receiver or at the direction of the Receiver.

## V.  Access to Real and Personal Property

10

18.     The Receiver is authorized to take immediate possession of all personal property of the Receivership Defendant, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies and equipment.

19.     The Receiver is authorized to take immediate possession of all real property of the Receivership Defendant, wherever located, including but not limited to all ownership and leasehold interests and fixtures. Upon receiving actual notice of this Order by personal service, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing or erasing anything on such premises.

20.     In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above. The Receiver shall have exclusive control of the keys. The Receivership Defendant, or any other person acting or purporting to act on their behalf, are ordered not to

change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

21.     The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Defendant, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

22.     Upon the request of the Receiver, the United States Marshal Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody and control of, or identify the location of, any assets, records or other materials belonging to the Receivership Estate.

### VI.  Notice to Third Parties

23.     The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, members, managers and general and limited partners of the Receivership Defendant, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

24.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant shall, until further ordered by this Court, pay all such obligations in accordance with the terms

thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

25.     In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estates. All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the SEC.

26.     The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of any of the Receivership Defendant (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Defendant.  The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail.  The Receivership Defendant shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver.  All personal mail and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the

13

Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented or used by the Receivership Defendant. The Receivership Defendant shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

27.     Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to the Receivership Defendant shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

28.     The Receiver is authorized to assert, prosecute and/or negotiate any claim under any insurance policy held by or issued on behalf of the Receivership Defendant, or their officers, directors, agents, employees or trustees, and to take any and all appropriate steps in connection with such policies.

## VII. Injunction Against Interference with Receiver

29.     The Receivership Defendant and all persons receiving notice of this Order by personal service, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

> A. Interfere with the Receiver's efforts to take control, possession or management of any Receivership Property; such prohibited actions

14

include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

B. Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

C. Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or the Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by the Receivership Defendant or which otherwise affects any Receivership Property; or,

D. Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estates.

30.    The Receivership Defendant shall cooperate with and assist the Receiver in the performance of his duties.

31.    The Receiver shall promptly notify the Court and SEC counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

### VIII. Stay of Litigation

32.     As set forth in detail below, the following proceedings, excluding the

instant proceeding and all police or regulatory actions and actions of the

Commission related to the above-captioned enforcement action, are stayed until

further Order of this Court:

> All civil legal proceedings of any nature, including, but not limited to,
> bankruptcy proceedings, arbitration proceedings, foreclosure actions,
> default proceedings, or other actions of any nature involving: (a) the
> Receiver, in his capacity as Receiver; (b) any Receivership Property,
> wherever located; (c) the Receivership Defendants, including
> subsidiaries and partnerships and related or affiliated unincorporated
> entities, including business lines or businesses operated via internet
> websites; or, (d) any of the Receivership Defendant's past or present
> officers, directors, members, managers, agents, or general or limited
> partners sued for, or in connection with, any action taken by them
> while acting in such capacity of any nature, whether as plaintiff,
> defendant, third-party plaintiff, third-party defendant, or otherwise
> (such proceedings are hereinafter referred to as "Ancillary
> Proceedings").

33.     The parties to any and all Ancillary Proceedings are enjoined from

commencing or continuing any such legal proceeding, or from taking any action, in

connection with any such proceeding, including, but not limited to, the issuance or

employment of process.

34.     All Ancillary Proceedings are stayed in their entirety, and all Courts

having any jurisdiction thereof are enjoined from taking or permitting any action

until further Order of this Court.  Further, as to a cause of action accrued or

accruing in favor of the Receivership Defendant against a third person or party,

any applicable statute of limitation is tolled during the period in which this

16

injunction against commencement of legal proceedings is in effect as to that cause of action.

### IX. Managing Assets

35.     For each of the Receivership Estates, the Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds").

36.     The Receiver's deposit account shall be entitled "Receiver's Account, Estate of Rex Venture Group LLC" together with the name of the action.

37.     The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.

38.     Subject to Paragraph 39, immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estates, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property.

17

39.     Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estates.

40.     The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estates, including making legally required payments to creditors, employees, and agents of the Receivership Estates and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

41.     The Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations, when applicable, whether proposed, temporary or final, or pronouncements thereunder, including the filing of the elections and statements contemplated by those provisions. The Receiver shall be designated the administrator of the Settlement Fund, pursuant to Treas. Reg. § 1.468B-2(k)(3)(i), and shall satisfy the administrative requirements imposed by Treas. Reg. § 1.468B-2, including but not limited to (a) obtaining a taxpayer identification number, (b) timely filing applicable federal, state, and local tax returns and paying taxes reported thereon, and (c) satisfying any information, reporting or withholding requirements imposed

18

on distributions from the Settlement Fund. The Receiver shall cause the Settlement

Fund to pay taxes in a manner consistent with treatment of the Settlement Fund as

a "Qualified Settlement Fund." The Receivership Defendants shall cooperate with

the Receiver in fulfilling the Settlement Funds' obligations under Treas. Reg. §

1.468B-2].

## X. Investigate and Prosecute Claims

42.      Subject to the requirement, in Section VII above, that leave of this

Court is required to resume or commence certain litigation, the Receiver is

authorized, empowered and directed to investigate, prosecute, defend, intervene in

or otherwise participate in, compromise, and/or adjust actions in any state, federal

or foreign court or proceeding of any kind as may in his discretion, and in

consultation with SEC counsel, be advisable or proper to recover and/or conserve

Receivership Property.

43.      Subject to his obligation to expend receivership funds in a reasonable

and cost-effective manner, the Receiver is authorized, empowered and directed to

investigate the manner in which the financial and business affairs of the

Receivership Defendant were conducted and (after obtaining leave of this Court) to

institute such actions and legal proceedings, for the benefit and on behalf of the

Receivership Estate, as the Receiver deems necessary and appropriate; the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order. Where appropriate, the Receiver should provide prior notice to Counsel for the Commission before commencing investigations and/or actions.

44.      The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by the Receivership Defendant.

45.      The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the Receivership Estate.

## XII.  Bankruptcy Filing

46.      The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Receivership Defendant.  If the Receivership Defendant is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as, a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor

20

in possession under the Bankruptcy Code to the exclusion of any other person or entity. Pursuant to Paragraph 4 above, the Receiver is vested with management authority for the Receivership Defendant and may therefore file and manage a Chapter 11 petition. [*See In re Bayou Group, LLC*, 564 F.3d 541, 548-49 (2nd Cir. 2009).]

47.    The provisions of Section VIII above bar any person or entity, other than the Receiver, from placing the Receivership Defendant in bankruptcy proceedings.

## XII. Liability of Receiver

48.    Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

49.    The Receiver and his agents, acting within scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree.  In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act

as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

50.     This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

51.     In the event the Receiver decides to resign, the Receiver shall first give written notice to the Commission's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

### XIII. Recommendations and Reports

52.     The Receiver is authorized, empowered and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property (the "Liquidation Plan").

53.     Within forty-five (45) days of the entry date of this Order, the Receiver shall file a preliminary Liquidation Plan, including a recommendation of further steps to effect the orderly resolution of this matter and efficient recovery, management and liquidation of recoverable Receivership Property.  The Receiver shall serve copies of the preliminary Liquidation Plan on counsel of record.

22

54.     Within ninety (90) days of the entry date of this Order, the Receiver shall file the Liquidation Plan in the above-captioned action, with service copies to counsel of record, unless this Receivership is terminated sooner upon order of this Court.

55.     In case of an ongoing Receivership, within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates.

56.     The Quarterly Status Report shall contain the following:

A. A summary of the operations of the Receiver;

B. The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C. A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D. A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

    E. A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

    F. A list of all known creditors with their addresses and the amounts of their claims;

    G. The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

    H. The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

57.    On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

## XIV.  Fees, Expenses and Accountings

58.    Subject to Paragraphs 59-65 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership.  Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

59.    Subject to Paragraph 60 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in

carrying out the duties and responsibilities described in this Order. The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

60.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver. Such compensation shall require the prior approval of the Court.

61.     Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications"). At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

62.     All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the

25

costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

63.    Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

64.    Each Quarterly Fee Application shall:

A. Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

B. Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

26

65.     At the close of the Receivership, the Receiver shall submit a Final

Accounting, in a format to be provided by SEC staff, as well as the Receiver's final

application for compensation and expense reimbursement.

     **IT IS SO ORDERED**, this 17th day of August 2012.

                                        _____
                                        United States District Judge

27

# EXHIBIT D

To Notice of Filing of Complaint and Order
Appointing Receiver Pursuant to 28 U.S.C. § 754

IN THE UNITES STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

vs.

REX VENTURES GROUP, LLC
d/b/a ZEEKREWARDS.COM, and
PAUL BURKS,

      Defendants.

Civil Action No. 3:12 cv 519

**ORDER GRANTING IN PART AND DENYING IN PART
RECEIVER'S MOTION SEEKING AMENDMENT OF AGREED ORDER
APPOINTING TEMPORARY RECEIVER AND FREEZING ASSETS OF
DEFENDANT REX VENTURE GROUP, LLC**

This matter is before the Court upon the Motion of Temporary Receiver Kenneth D. Bell

(the "Receiver") Seeking Amendment of Agreed Order Appointing Temporary Receiver and

Freezing Assets of Defendant Rex Venture Group, LLC (the "Motion") filed on August 24,

2012. After considering the Motion, and having heard arguments of counsel at a hearing on

August 30, 2012, **IT IS ORDERED, ADJUDGED AND DECREED** as follows:

    1.    The Motion is **GRANTED IN PART** and **DENIED IN PART**.

    2.    The Agreed Order Appointing Temporary Receiver and Freezing Assets of

Defendant Rex Venture Group, LLC (Doc. No. 4) (the "Agreed Order") entered on August 17,

2012 is amended to strike the second recital paragraph in its entirety and replace it with the

following:

1

"WHEREAS, the Court finds that, based on the record in these proceedings, the appointment of a temporary receiver in this action of Defendant Rex Venture Group, LLC d/b/a ZeekRewards.com, any of its subsidiaries, whether incorporated or unincorporated, and any businesses or business names under which it does business ('Receivership Defendant') is necessary and appropriate for the purposes of marshaling and preserving all assets of the Receivership Defendant, including currency, checks, cashier's checks, teller's checks, certified checks, money orders, drafts, notes, payments, properties or other assets held, possessed, received or credited by the Receivership Defendant on or after August 17, 2012 ('Receivership Assets'); and for the purposes of recovering and preserving those assets: (a) held in constructive trust for the Receivership Defendant; or (b) fraudulently transferred by the Receivership Defendant (together, 'Recoverable Assets')."

**IT IS SO ORDERED**, this 30th day of August 2012.

Graham C. Mullen
United States District Judge

2